**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| DEION E. PAGE, et al., | |
| *Plaintiffs*, | |
| v. | Civil Action No. 1:21-cv-1744 (CJN) |
| WHOLE FOODS MARKET SERVICES, et al., | |
| *Defendants*. | |

<u>**MEMORANDUM OPINION**</u>

Deion Page and his mother, Ethelia Roberts, worked for Whole Foods.  A series of unfortunate events led their coworker, Amin Sadalah, to batter Page just steps outside the entrance to the supermarket.  Page and Roberts sued Whole Foods in the Superior Court of the District of Columbia, and Whole Foods later removed the action to federal court on the basis of diversity jurisdiction.  Page and Roberts then amended their complaint to add Sadalah as a defendant, destroying complete diversity.  Page and Roberts have now moved to remand the case to Superior Court, Mot. to Remand, ECF No. 8; Whole Foods opposes, contending that Page and Roberts added Sadalah for no purpose other than to deprive the Court of subject-matter jurisdiction.  *See* Mem. in Opp'n to Mot. to Remand, ECF No. 14.  For the reasons that follow, the Court declines to drop Sadalah from the case and grants the motion to remand.

### I.    Background

Deion Page, a resident of the District, took a position with Whole Foods in August 2019.  *See* Am. Compl., ECF No. 7, ¶ 13.  Page's mother, Ethelia Roberts, also worked for the

supermarket.  *Id.* ¶ 14.  Both worked as sanitation workers, keeping clean the floors, back offices, seating areas, and bathrooms.  *Id.* ¶ 18.

During his time with the supermarket, Page informed his supervisor on numerous occasions that his coworker and fellow District resident, Amin Sadalah, had dumped fecal matter in his assigned cleaning areas.  *Id.* ¶ 19.  After taking pictures of what Sadalah had done, Page shared the photos with store management.  *Id.* ¶ 21.  Yet store management took no action in response. *Id.* ¶ 22.

Sadalah did not take kindly to Page's actions.  In retaliation for Page informing store management of his conduct, Sadalah called Page a "do boy," a "snitch," and a "rat."  *Id.* ¶ 23.  He also vandalized a plaque Page received for his exemplary work performance.  *Id.* ¶ 24.  All employees, including Roberts, observed the vandalized plaque as it hung on the wall of the employee breakroom.  *Id.* ¶ 28.  Page reported Sadalah's vandalism to store management.  *Id.* ¶ 29.  Again, store management took no action in response.  *Id.* ¶ 32.

Sadalah later responded to Page's decision to report the vandalism to store management by raising his fist, threating to hit Page, and yelling "stop playing, Boy, I'll F*** you up."  *Id.* ¶ 34. Store management met with both employees after the incident, admonishing both to knock it off. *Id.* ¶ 36.

A couple hours after that meeting, at approximately 11:25 pm, Page exited the store at the end of his shift.  *Id.* ¶ 38.  Sadalah, along with two other men, approached Page on the sidewalk right outside the supermarket.  *Id.* ¶ 39.  While still donning his store uniform, Sadalah yelled obscenities at Page and accused him of "snitching."  *Id.* ¶ 40.  Page tried to walk away.  *Id.* ¶ 41. But Sadalah ran Page down, grabbed his arm, brandished a firearm, threatened to harm him and Roberts, and then proceeded to kick, punch, and stomp Page into a pulp.  *Id.* ¶¶ 44–46.  Sadalah's

accomplices assisted him in assaulting Page.  *Id.* ¶ 44.  Page sustained lacerations to his face, a swollen temple, a bloody mouth, multiple broken ribs, and a concussion.  *Id.* ¶ 49.

Page informed store management of the assault.  *Id.* ¶ 53.  Roberts, distraught and fearful after the attack on her son, presented store management with a temporary restraining order she obtained against Saladah.  *Id.* ¶ 57.  Despite knowledge of the attack and the restraining order, store management scheduled shifts that required Roberts and Saladah to work in close quarters. *Id.* ¶ 58.  Roberts complained, but store management again failed to respond.  *Id.* ¶ 60–61.  Months later, the store terminated both Page and Roberts.  *Id.* ¶¶ 62–67.

On May 12, 2021, Page and Roberts filed a complaint against Whole Foods in the Superior Court of the District of Columbia, seeking to recover damages against Whole Foods under several theories and causes of actions related to the attack and the supermarket's alleged failure to put an end to the coworker's harassment.  *See generally* Notice of Removal, ECF No. 1-4.  On June 30, 2021, Whole Foods removed the action to this Court on the basis of diversity jurisdiction.  *Id.*[1]  On July 16, 2021, Page and Roberts, pursuant to Rule 15(a)(1) of the Federal Rules of Civil Procedure, filed an Amended Complaint.  *See* Am. Compl.  The Amended Complaint adds several factual allegations, additional cause of actions, and Sadalah as a second defendant.  *Id.*

Page and Roberts have moved to remand the case back to Superior Court, reasoning that the Court now lacks subject matter jurisdiction over the case because the addition of Sadalah destroys complete diversity.  *See* Mot. to Remand, ECF No. 8.  Whole Foods, in response, contends that the Court should deny the motion to remand because Page and Roberts added Sadalah for no purpose other than to deprive the Court of subject-matter jurisdiction.  *See* Mem. in Opp'n to Mot. to Remand, ECF No. 14.

---

[1] Whole Foods is incorporated in Delaware and has its principal place of business in Texas.  *See* Mem. in Opp'n to Mot. to Remand, ECF No. 14 at 3 n.3.

## II.    Legal Standard

"Federal courts, unlike their state counterparts, are courts of limited jurisdiction." *Nw. Airlines, Inc. v. Transp. Workers Union of Am., AFL-CIO*, 451 U.S. 77, 95 (1981).  As a result, the law, reflecting federalism concerns, presumes that a case falls outside a federal court's limited reach.  *See Johnson-Brown v. 2200 M St. LLC*, 257 F. Supp. 2d 175, 177 (D.D.C. 2003).  A defendant may, nevertheless, remove an action first filed in state court to federal court when the federal court possesses subject-matter jurisdiction over the case.  *See* 28 U.S.C. § 1441(a); *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).  In recognition of the Framers' design for state rather than federal courts to form the backbone of the nation's judiciary, *see* U.S. CONST. art. III, § 1 (permitting yet not requiring Congress establish "inferior courts"); *id.* art. III, § 2 (restricting federal court jurisdiction to particular types of "cases" and "controversies"), a federal court will strictly construe the scope of its removal jurisdiction, *see Clean Label Project Found. v. Now Health Grp., Inc.*, No. CV 21-11 (JDB), 2021 WL 2809106, at *2 (D.D.C. July 6, 2021).  And the party challenging a motion to remand the case back to where it originated bears the burden of establishing the federal court's subject-matter jurisdiction to keep the controversy.  *See Wilson v. Republic Iron & Steel Co.*, 257 U.S. 92, 97 (1921); *Busby v. Cap. One, N.A.*, 841 F. Supp. 2d 49, 53 (D.D.C. 2012).

The removal statute recognizes that a defendant may remove to federal court an action brought in a state court when subject-matter jurisdiction exists in the form of diversity of citizenship.  *See* 28 U.S.C. § 1441(a)-(b); *see Caterpillar Inc. v. Williams*, 482 U.S. 386, 392 (1987).  Such jurisdiction exists when the action involves citizens of different states and the amount-in-controversy exceeds $75,000.00.  *See* 28 U.S.C. § 1332(a); *Home Depot U. S. A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019).  Though the federal Constitution requires less, *see* U.S.

CONST. art. III, §§ 1–2 ("The judicial Power of the United States . . . shall extend . . . to Controversies . . . between Citizens of different States."), the Supreme Court has established the complete diversity rule, which mandates that no plaintiff be of the same citizenship as any defendant, *see Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 373 & 373 n.13 (1978).

Whether there is complete diversity is typically assessed at the time the action is commenced. *See Grupo Dataflux v. Atlas Glob. Grp., L.P.*, 541 U.S. 567, 571 (2004). Where, however, "a plaintiff files a complaint in federal court and then voluntarily amends the complaint, courts look to the amended complaint to determine jurisdiction," *Rockwell Int'l Corp. v. United States*, 549 U.S. 457, 473–74 (2007), which makes sense because "an amended complaint supersedes an earlier complaint for all purposes," *In re Refrigerant Compressors Antitrust Litig.*, 731 F.3d 586, 589 (6th Cir. 2013). That rule, however, comes with a twist in removal cases.

Removal cases present concerns about forum manipulation that cut against allowing a plaintiff's post-removal amendments to affect a court's subject-matter jurisdiction. *See Wright Transportation, Inc. v. Pilot Corp.*, 841 F.3d 1266, 1272 (11th Cir. 2016); *In Touch Concepts, Inc. v. Cellco P'ship*, 788 F.3d 98, 101 (2d Cir. 2015). Having initiated the action in state court, a plaintiff may seek to manipulate post-removal pleadings to deprive the federal court of subject-matter jurisdiction and force a remand back to state court. *In re Burlington N. Santa Fe Ry. Co.*, 606 F.3d 379, 381 (7th Cir. 2010) (per curiam) ("And though it is sometimes possible for a plaintiff who sues in federal court to amend away jurisdiction, removal cases present concerns about forum manipulation that counsel against allowing a plaintiff's post-removal amendments to affect jurisdiction."); *Broadway Grill, Inc. v. Visa Inc.*, 856 F.3d 1274, 1278 (9th Cir. 2017). So in cases where the plaintiff's amended complaint tinkers with the amount-in-controversy in such a way that would deprive the court of subject-matter jurisdiction, courts should look to "the plaintiff's original

complaint, not post-removal amendments" to determine whether the amount-in-controversy requirement has been met. *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 604 (D.C. Cir. 2020). And in cases where the plaintiff's amended complaint adds a non-diverse defendant that would deprive the court of subject-matter jurisdiction, courts at a minimum "must scrutinize more closely an amended pleading that would name a new non-diverse defendant in a removed case because justice requires that the district court also balance the defendant's interests in maintaining the federal forum." *Dever v. Fam. Dollar Stores of Georgia, LLC*, 755 F. App'x 866, 869 (11th Cir. 2018).

### III.   Remand is Appropriate

Recall that, after Whole Foods removed this case to federal court, Page and Roberts amended their complaint to add Saladah as a defendant. Recall, too, that Page and Saladah call the District their home. As Page and Roberts see it, the Court now lacks subject-matter jurisdiction over the case because parties on both sides of the v share the same citizenship. Complete diversity, from their vantage point, has been destroyed. Whole Foods, in response, asks the Court to reject the effort to add Saladah as a defendant because, in its view, the sole purpose behind his addition was to deprive the Court of subject-matter jurisdiction.

Rule 15(a)(1) permits a plaintiff to file *as of right* an amended complaint within 21 days of serving the initial complaint or within 21 days after the service of a responsive pleading.[2] Fed. R. Civ. P. 15(a)(1) (allowing a party to "amend its pleading once as a matter of course within: (A) 21 days after serving it, or (B) if the pleading is one to which a responsive pleading is required, 21

---

[2] The right to file an amended complaint in conformity with Rule 15(a)(1) has been described as "automatic." *Ramirez v. Cty. of San Bernardino*, 806 F.3d 1002, 1008 (9th Cir. 2015); *Sacerdote v. New York Univ.*, 9 F.4th 95, 115 (2d Cir. 2021) ("At the outset of the litigation, a plaintiff may freely amend her pleadings pursuant to Rule 15(a)(1) as of right without court permission."); *see* Wright & Miller, Federal Practice and Procedure § 1480 (3d ed. 2021) (noting that "Rule 15(a)(1) states" that a party "may amend a pleading once without the permission of the court or the consent of the parties").

days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."); *Chelmowski v. AT & T Mobility, LLC*, 615 F. App'x 380, 381 (7th Cir. 2015) (order) (noting that the Rule "applies to pleadings, not to motions").  By its terms, Rule 15(a)(1) permits Page and Roberts to add Saladah as a defendant, which, in theory at least, should deprive the Court of subject-matter jurisdiction.  In such a case, the Court "seems stuck:" it has no choice but to remand because it no longer has diversity jurisdiction.  *Avenatti v. Fox News Network, LLC*, No. 20-CV-01541-SB, 2021 WL 2143037, at *2 (D. Del. May 26, 2021); *see also* 28 U.S.C. § 1447(c) ("If at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded.").

Out of concern that such amendments might be made solely for the purpose of defeating federal jurisdiction, Courts have developed various methods to prevent jurisdictional gamesmanship.  Consider just a few.

The Fourth Circuit, for starters, has granted district courts "the authority to reject a post-removal joinder," "even if the joinder was [made as of right] without leave of court" under Rule 15(a)(1).  *Mayes v. Rapoport*, 198 F.3d 457, 462 n.11 (4th Cir. 1999).  Other courts ignore Rule 15(a)(1), deny the plaintiff's right to file an amended complaint to add a non-diverse defendant, and instead apply 28 U.S.C. § 1447(e).  *See Bevels v. Am. States Ins. Co.*, 100 F. Supp. 2d 1309, 1312 (M.D. Ala. 2000).  Section 1447(e) grants a court an either-or option:  either deny joinder and keep the case or permit joinder and remand the action.  *See* 28 U.S.C. § 1447(e) ("If after removal the plaintiff seeks to join additional defendants whose joinder would destroy subject matter jurisdiction, the court may deny joinder, or permit joinder and remand the action to the State court.").

Some courts have concluded that § 1447(e) does not apply in this context because that provision cannot trump a plaintiff's a right to amend the complaint under Rule 15(a)(1).  Those courts instead apply the fraudulent joinder doctrine, which asks whether the plaintiff has a possibility of succeeding on the claim against the newly added non-diverse defendant.  *McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 231 (D.N.J. 2020); *Nytes v. Trustify, Inc.*, 297 F.Supp.3d 191, 202–03 (D.D.C. 2018).  And at least one court has concluded that even though a plaintiff has a right to file an amended complaint under Rule 15(a)(1), Rule 21 provides a court with the authority to dismiss the newly added non-diverse defendant.  *See Avenatti v. Fox News Network, LLC*, No. 20-CV-01541-SB, 2021 WL 2143037, at *4 (D. Del. May 26, 2021).  Rule 21 provides that a court "may at any time, on just terms, add or drop a party."  Fed. R. Civ. P. 21.  Courts often use Rule 21 to dismiss non-diverse parties to preserve the court's subject-matter jurisdiction.  *See Hardaway v. Checkers Drive-In Restaurants*, Inc., 483 F. App'x 854, 855 (4th Cir. 2012) (quotation omitted) ("Rule 21 invests a district court with authority to allow a dispensable nondiverse party to be dropped at any time."); *Yuille v. Am. Home Mortg. Servs., Inc.*, 483 F. App'x 132, 134 n.1 (6th Cir. 2012) (per curiam) (noting that Rule "21 allows a court to preserve its diversity jurisdiction by "drop[ping]" a non-diverse, dispensable party"); *Bennick v. Boeing Co.*, 427 F. App'x 709, 712 (11th Cir. 2011) (quotation omitted) ("Courts have employed Rule 21 to preserve diversity jurisdiction by dropping a nondiverse party not indispensable to the action."); *See* Wright & Miller, Federal Practice and Procedure § 1682 (3d ed. 2021) ("Rule 21 has been invoked to preserve the court's diversity jurisdiction by dropping nondiverse parties when their presence in the action was not required.").

In the Court's view, the following approach should control in cases like this one:  When a plaintiff adds a non-diverse defendant under Rule 15(a)(1) after the case has been removed, the

Court should ask whether the plaintiff has a possible chance of succeeding on the claims against the newly added non-diverse defendant, or whether the claims are instead frivolous.[3]  If the answer is yes, that the plaintiff has a possible chance of success, then the Court should decline to exercise its authority under Rule 21 to drop the defendant, declare that it lacks subject-matter jurisdiction over the case, and remand the case back to district court.  If the answer is no, that is, that the plaintiff's claims against the non-diverse defendant are frivolous, then the Court should invoke Rule 21, drop that defendant from the amended complaint, and retain the case on diversity grounds.[4]

Applying that framework, the Court first asks whether Page and Roberts have a possible chance of succeeding on their claims against Sadalah.  Page and Roberts amended their complaint to add assault claims and a battery claim against Sadalah.  The amended complaint asserts that Sadalah, while on shift at Whole Foods, "raised his fist and threatened to strike" Page, which resulted in Page anticipating violent contact.  *See* Am. Compl. ¶¶ 70, 72.  The amended complaint also contends that Sadalah subjected both Roberts and Page to the "imminent threat of harmful or

---

[3] On the surface, the analysis under the fraudulent joinder doctrine seems akin to the analysis under Rule 12(b)(6), as both "require some assessment of the plaintiff's lawsuit."  *Grancare, LLC v. Thrower by & through Mills*, 889 F.3d 543, 549 (9th Cir. 2018).  Though similar, the standards are far from equivalent.  *Id.*  The plausibility standard governs the analysis under Rule 12(b)(6), *see Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Jones v. Horne*, 634 F.3d 588, 595 (D.C. Cir. 2011), whereas the possibility standard controls the analysis under the fraudulent joinder doctrine, *Hartley v. CSX Transp., Inc.*, 187 F.3d 422, 424 (4th Cir. 1999) (quotation omitted).  The possibility standard targets conceivability, and it resembles the "wholly insubstantial and frivolous" standard for dismissing claims under Rule 12(b)(1) for lack of federal question jurisdiction.  *Grancare*, 889 F.3d at 549.

[4] The Court pauses to make a procedural point and a substantive point.  On the procedural front, the dismissal of the non-diverse defendant under Rule 21 should come before (or at the same time) the Court analyzes the amended complaint to decide whether it has subject-matter jurisdiction over the case.  That method of operation safeguards a plaintiff's right under Rule 15(a)(1), while also keeping the Court from analyzing the amended complaint for subject-matter jurisdiction before dismissing the non-diverse defendant.  On the substantive front, Rule 21 should not be used to drop a party when Rule 19 requires that party's presence.  *See Deschutes River All. v. Portland Gen. Elec. Co.*, 1 F.4th 1153, 1162–63 (9th Cir. 2021) (noting that "Rule 19(a) requires joinder of a party whose presence is necessary to ensure complete relief among the existing parties, or to protect a party whose interests would be impaired or impeded were the action to proceed without that party"); *see* Wright & Miller, Federal Practice and Procedure § 1685 (3d ed. 2021); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Flanders-Borden*, 11 F.4th 12, 17 (1st Cir. 2021) (quotation omitted).  Yet as a practical matter, Rule 19 will not get in the way of a court using Rule 21 to dismiss a non-diverse defendant in the removal context.  Where the plaintiff has no possible chance of succeeding on a claim against the newly added non-diverse defendant that defendant will almost certainly not come within Rule 19's orbit.

offensive contact during Store hours." *Id.* ¶ 73.  And it asserts that Sadalah, while brandishing a firearm, threatened to beat Page to a pulp.  *Id.* ¶¶ 74–80.  As far as the battery claim goes, the amended complaint states that Sadalah, steps from the supermarket's entrance, grabbed Page and beat him to a pulp, "causing multiple broken ribs, severe lacerations to the face, swelling, bruising, and a concussion." *Id.* ¶ 83.  Those factual allegations, taken as true, lead the Court to conclude that Page and Roberts do have a possible chance of succeeding on their claims against Sadalah.

Whole Foods offers several counterarguments.  None persuades.

Whole Foods contends that 28 U.S.C. § 1447(e) governs a plaintiff's attempt to amend the complaint to add a non-diverse defendant, and that the Court should consider four factors when exercising its discretion under that provision:  "(1) any delay, and the reasons for the delay, in seeking to amend; (2) any resulting prejudice to the defendant; (3) the likelihood of multiple litigation; and (4) the plaintiffs' motivation in moving to amend." *Burka v. Aetna Life Ins. Co.*, 87 F.3d 478, 481 n.4 (D.C. Cir. 1996) (quotation omitted).  Section 1447(e), however, does not apply here because Plaintiffs had a right to amend their complaint under Rule 15(a)(1).  The sounder approach, as explained, is for the Court to exercise its discretion under Rule 21.  But even assuming the Court applied the § 1447(e) factors, it would still decide that remand is appropriate.

As to the first factor, Page and Roberts amended their complaint within 21 days of the case's removal to federal court and did so in conformity with Rule 15(a)(1).  The Court therefore cannot say that they were dilatory.  As to the second factor, besides expending resources to remove the action, Whole Foods suffers little prejudice from litigating this matter in Superior Court.  As to the third factor, the core of the case involves Sadalah's conduct while in Whole Foods' employ and often while on shift.  The prospect for duplicative litigation in two separate forums therefore seems likely if the Court were to drop Sadalah from the Amended Complaint.  Indeed, Whole

Foods acknowledges that Page and Roberts could file a separate lawsuit in Superior Court against Sadalah for assault and battery.  *See* Mem. in Opp'n to Mot. to Remand, ECF No. 14 at 8.  As to the fourth factor, Page and Roberts have added factual allegations and colorable claims against Sadalah to their amended complaint, which they had a right to do under Rule 15(a)(1).  The possibility of success on those claims cuts against a finding that they filed the Amended Complaint solely to defeat diversity jurisdiction.  Page and Roberts also claim that they added Sadalah at the later stage because they could not locate his whereabouts earlier on for purposes of service of process, *see* Pls.'s Reply to Def.'s Opp'n to Pls.'s Mot. to Remand, ECF No. 16 at 8, which is at least a plausible story.  All in all, based on the present record, the Court cannot say that Page and Roberts had no purpose in adding Sadalah other than to destroy complete diversity.

*Eastman v. The Peggs Co.*, No. 08-CV-12036, 2008 WL 2714429 (E.D. Mich. July 8, 2008), a case upon which Whole Foods relies, is readily distinguishable.  There, the plaintiff was unable to amend the complaint as a matter of course under Rule 15(a)(1), and thus was required to move for leave to amend the complaint pursuant to Rule 15(a)(2).  *Id.* at *1.  Here, by contrast, Page and Roberts enjoyed the right to amend their complaint as a matter of course under Rule 15(a)(1).

*Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 604 (D.C. Cir. 2020), does not force the Court to switch lanes.  Recall that a court as a general matter assesses its subject-matter jurisdiction over a case based on the amended complaint rather than the original complaint. *See Scahill v. D.C.*, 909 F.3d 1177, 1183 (D.C. Cir. 2018).  This rule, among other things, grants a plaintiff the opportunity to cure jurisdictional defects arising from the original complaint.  *Id.* Out of concerns about forum manipulation in removal cases, however, the Court of Appeals has adopted a rule applicable to such cases that directs courts to "look to the plaintiff's original

complaint, not post-removal amendments" to determine whether subject-matter jurisdiction lies. *Bronner on Behalf of Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 604 (D.C. Cir. 2020).  But the Court of Appeals did not consider Rule 15(a)(1) when it adopted that rule; nor did it address the addition of a non-diverse defendant.  Rather *Bronner* concerned post-amendment tinkering with the amount-in-controversy.  The Court therefore reads *Bronner* to apply in removal cases where the plaintiff, in an effort to defeat diversity jurisdiction, fiddles with the amount-in-controversy rather than the situation where, as here, the plaintiff adds a non-diverse defendant.

## IV.    Conclusion

For the foregoing reasons, Page and Roberts's Motion to Remand is **GRANTED**.  Whole Foods's Motions to Dismiss are **DENIED** as **MOOT**.   An Order will be entered contemporaneously with this Memorandum Opinion.

DATE:  November 3, 2021

CARL J. NICHOLS
United States District Judge